SUMNER M. CARR

*vs.*

PISCATAQUIS WOOLEN COMPANY AND M. L. HUSSEY WOOLEN
COMPANY.

Piscataquis.   Opinion December 29, 1912.

*Brief Statement.   Complaint.   Dam.   Damages.   Efficient height.   Flowage.*
*Freshet.   Mill.   Petition.   Prescription.   Repairing.   Writ.*

This is a complaint for flowage and is inserted in a writ of attachment.   The
plaintiff is the owner of several lots of land in the town of Abbott in Pis-
cataquis County, bounded by the Piscataquis river.   The defendants are
owners of woolen mills in the town of Guilford.   In 1881, the Piscataquis
Woolen Company erected a water mill, or factory, and maintained same
ever since, upon its land on the north side of said river in Guilford village.
The M. L. Hussey Woolen Company, in 1906, erected a water mill upon
its land on the south side of said river.   The defendants, in 1909, erected
a mill dam across said river at Guilford village to raise water for working
their mills, and still maintain said mills and dam.   The first dam was built
in 1823, rebuilt in 1864, repaired in 1903, and replaced in 1909 by a dam of
concrete.

*Held:*

1.   That the defendants had the right to construct a new concrete dam a few
feet below the old dam.

2.   The uncontradicted testimony of the Engineer Crowley corroborates the
theory of the defendants that the increase in the height of the water in
the river above the logs on April 29th and May 15th was not due to the
height of the dam, or the fault of the defendants.

3.   It is admitted that the defendants in 1903 had acquired a prescriptive
right to flow the plaintiff's land to the extent that it would be flowed by
the water held back by the dam at its effective height, as said dam existed
in that year prior to any repairs, changes or additions made in said year.

4.   The defendants had the right to maintain a dam as it was before the
repairs in 1903.   If repairs were necessary, they had the right to make
them and to build a new dam in place of the old dam.

On report.  Judgment for defendant with costs.

This is a complaint for flowage inserted in a writ of attachment. The plaintiff is the owner of several lots of land in the town of Abbott, in Piscataquis County, bounded by the Piscataquis river. The defendants are owners of woolen mills in the town of Guilford. The Piscataquis Woolen Company, in 1881, erected a woolen mill in Guilford village, in said county, on the north side of said river, and said M. L. Hussey Woolen Company, in 1906, erected upon its land a water mill, on the south side of the said river.  Said defendant, in 1909, erected a dam across said river and maintained same to date of this complaint upon and across said river at said Guilford village, to raise water for working said mills.  This dam extends from and upon the land of the Piscataquis Woolen Company on the north side of the river to and across to land of said Hussey Woolen Company on the south side of said river.  The plaintiff claims that this dam has caused the water in said river to overflow upon his land and to damage him.  The defendants plead the general issue with the following statement of special matters of defense:

First, that they have a right to maintain the dam set out in the complaint of said plaintiff and to flow the lands of said plaintiff without any compensation.

Second, that said dam has been maintained at its present height for more than fifty years, and that said defendants have acquired the right by prescription to have and maintain said dam at its present height.

Third, that when the concrete dam which now exists across said river was built in the summer of 1909 it was not built to any greater height than the wooden dam which was taken down at the time said concrete dam was built.

The land described in this complaint is located about one and one-half miles above defendant's dam.  That the defendant's had a right to construct a new concrete dam a few feet below the old dam is not questioned.

At the conclusion of the evidence, the case was reported to the Law Court by agreement of parties, upon so much of the evidence as is legally admissible, the Law Court to render such judgment as the law and evidence require.

The case is stated in the opinion.

*J. S. Williams, and Warren C. Philbrook,* for plaintiff.

*Hudson & Hudson,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J. This is a complaint for flowage inserted in a writ of attachment, and comes before the court on report.

The plaintiff is the owner of several lots of land in the town of Abbott in Piscataquis County, bounded by the Piscataquis river, or near said river and its tributaries.

The defendants are owners of woolen mills in the town of Guilford. The complaint alleges: "That the said Piscataquis Woolen Company, a long time ago, to wit; A. D. 1881, erected and have ever since maintained a water mill, to wit, a woolen mill or factory, so called, at Guilford village, in said county, on the north side of said Piscataquis river, and upon its land; and the said M. L. Hussey Woolen Company, a long time ago, to wit; A. D. 1906, erected upon its land and has since maintained a water mill, to wit, a woolen mill or factory, so called, at Guilford village aforesaid, on the south side of said river, which said river is not navigable; and the said defendants in a certain year, to wit, A. D. 1909, erected a mill-dam and have maintained the same to the date of this complaint, upon and across said river at said Guilford village, to raise water for working said mills and still maintain the same to this date and still maintain said mills; said dam extending from and upon land of the said Piscataquis Woolen Company on the north side of said river across to and upon land of the said Hussey Woolen Company on the south side of said river; and said dam was erected and maintained and is still maintained by said defendants for the purpose of raising the water in said river to work and operate said mills:

"That by means of said dam the said defendants have caused the water in said river to overflow and drown, damage, injure and destroy from the date aforesaid, to wit, the year of our Lord 1909 to the present time the complainant's land aforesaid, whereby said land has been rendered useless, and your complainant has sustained great damage in his land by reason of said flowage by said mill-

dam, yearly, since the erection and during the maintenance of said dam as aforesaid, in a large sum of money, to wit, the sum of one thousand dollars."

The defendants plead the general issue, and by brief statement say: First, that they have a right to maintain the dam set out in the complaint of said plaintiff and flow the lands of said plaintiff without any compensation.

Second, that said dam has been maintained at its present height for more than fifty years, and that said defendants have acquired the right by prescription to have and maintain said dam at its present height.

Third, that when the concrete dam which now exists across said river was built in the summer of 1909, it was not built to any greater height than the wooden dam which was taken down at the time said concrete dam was built.

The land described in this complaint is located about one and one-half miles above defendant's dam. The first dam in the river at this point was built in 1823; was replaced in 1864 by a new dam similar to the first; this was re-built in 1881 and continued in use until 1903 when it was repaired by one Trafton. In 1906 it was again repaired, and in 1909 it became necessary to make more extensive repairs on the dam and the work had progressed to some extent when the owners concluded to build a new dam of concrete, which was done in that year. That the defendants had the right to construct a new concrete dam a few feet below the old dam is not questioned.

The plaintiff claims that the new dam has been raised above the level existing before 1903, when repairs were made by Trafton, making a radical change in the actual height of the dam, and necessarily a change in its effective height, and that the damage complained of followed the repairs of 1903 to some extent, but became greater after the year 1909, when the new concrete dam was built to supply the place and purposes of the old dam.

After the plaintiff introduced the testimony of civil engineers, and his own testimony as to the location of the dam, the property claimed to be flowed, the course of the river and distance of the land flowed above the dam, the presiding Justice ruled that the

defendant's plea admitted the flowage as claimed by the plaintiff; that plaintiff had made out a prima facie case, and that under the pleadings the burden of proceeding changed.

The defendants thereupon introduced evidence tending to show:

1, That since 1864 the actual height of the various dams, when in good repair, has been the same.

2, That since 1881 a mark in the granite wall of the Piscataquis Woolen Mill which then showed the upper side of the top log of the old dam, has been used as a guide in all repairs since made and was especially used in determining the height of the new concrete dam which was built in 1909, and that it was built no higher than the dam which it replaced, allowance being made for the planking which projected above the top log about four inches.

3, That the new dam did not, and does not, flow any more land than the dams of 1864, 1881, 1903, and 1906 flowed when in repair and in good order.

4, That any additional flowage occurring in April or May, 1911, as claimed by plaintiff, was due to an unusual freshet at the time, and also due to the presence of a large boom of logs in the river at a point one-half mile above their dam, belonging to the Piscataquis Lumber Company, and over which the defendants had no control.

The testimony on both sides was directed mainly to the actual height of the various dams, and the extent of the flowage at different periods. The plaintiff insists that the case should proceed and be governed by the points shown, upon a plan, to have been reached by the water on April 29, 1911,—as conclusive that a larger area was flowed on that date than ever before.

In answer to this contention the defendants claim that on April 29, 1911, there was an unusually high run of water, due to the spring freshet, and the case shows that on that day the level of the river was thirty-two inches above the dam, a point so high, defendants claim, that no act of theirs could influence the flow, and while at such stage their mills could not be used.

The defendants introduced the testimony of one Elmer Crowley, a civil engineer, who had made a survey of the river in January, 1911, and again on May 15, 1911, after the freshet had subsided and defendants' mills were in operation. On May 15, 1911, he

found a boom of logs in the river at a steam saw-mill located one-half mile above the concrete dam, and while there ascertained the level of the water below and above the logs, and found the elevation of the water above the logs to be five inches higher than below the logs "and the water was at the top of the dam but not running over."

This testimony is uncontradicted and corroborates the theory of the defendants that the increase in the height of the water in the river above the logs on April 29th and May 15th was not due to the height of the dam, or the fault of the defendants.

It is admitted "that the defendants in 1903 had acquired a prescriptive right to flow the plaintiff's land to the extent that it would be flowed by the water held back by the dam at its effective height, as said dam existed in that year prior to any repairs, changes or additions made in said year."

What was the effective height of the dam in 1903, before it was repaired? Counsel disagree as to the actual height of the structure of 1903, and 1909, but are in agreement that the definition of "effective height" as given in *Voter* v. *Hobbs,* et als, 69 Maine, 19, is correct and accurate. In that case the complaint and pleadings were the same as in the case at bar. The issue to the jury was on the defendants' right by prescription and it was found in their favor, and upon exceptions, was sustained. It was there held, that "the effective height of the dam is the height which flows. That is what is to govern, and that is precisely what the presiding Justice instructed the jury was to govern. The amount of land flowed would depend on the effective height of the dam, and the right to flow would be limited by it. Dams need repairing. They vary in tightness. The water may be used with more or less economy, at different times, depending upon the exigencies of business. As was remarked by Shaw, C. J., in *Ray* v. *Fletcher,* 12 Cush., 200, "although the water actually raised by it (the dam) may to some extent vary from one season, or one year to another, owing to the tightness of the dam, the mode of using the water, the different seasons, as being dry or wet and the like, yet these considerations are too variable and uncertain to be adopted or relied on as the basis of a right acquired by grant or prescription" . . . . .

The prescriptive right having been acquired, the right to flow with

a dam of the prescribed effective height necessarily follows. It is not what the dam may absolutely flow at a particular time, but what the dam in good condition ordinarily will flow. The dam is assumed to be in good condition, and being in such condition, the flowage is what must result from such condition—unaffected by the changes of the seasons or the occasional leakage of the dam." In reaching the conclusion quoted from *Ray* v. *Fletcher,* 12 Cush., 200, Shaw, C. J., said "It is not the actual height of the dam, which will regulate the prescriptive right of the party holding it, but its efficient height, according to its structure and operation, to maintain the height of the water, when in repair and in good order."

The defendants admittedly had the right to maintain a dam as it was before the repairs in 1903. If repairs were necessary, they had the right to make them. Plaintiff introduced testimony of Elmer Harrington as to additional flowage after such repairs in 1903. Mr. Harrington had knowledge of the river for a period of twenty years. He was asked, "Q. Has your attention been called to an increase in the rise of water along the farms, by your farm and the adjacent farms along the river? A. It has. Q. Since the repairs of L. B. Trafton? (1903) A. No, I didn't notice that in particular after the repairs by Trafton; not particularly. Q. I say since then, any time? A. Since then, yes, I have, since then. . . . When the water to your knowledge was at the height of the new dam? . . . A. Well, I have some. Well, I have a road, a driveway, I say I have it, that goes from my high land down on to my low intervale, and when it is to the height of the dam there, I have noticed in particular, just comes up so it makes it muddy for me to get across on to my low intervale. There is no water particularly across the road, just comes up to the road, and makes it deep and undermines it so it is impossible to haul a good load across there. Q. What was the condition of that road before the new dam was put in? A. It was always all right, without it was in a very big—else in a freshet, or something of that kind, it never bothered me at least carting across it."

Other testimony introduced by the plaintiff tends to show a noticeable, but not a substantial additional flowage after the repairs of 1903, and it appears that extensive repairs were made in 1906.

In 1909, the dam had worn down to such an extent that the owners decided to build a new concrete dam. The claim that the dam as repaired in 1903 caused actionable damage is not sustained by the evidence, and this conclusion is supported by the fact that no complaint was made or action taken by any riparian proprietor after the repairs in 1903, or 1906, and the testimony adduced as to flowage on other dates than April 29, 1911, is so unsatisfactory, and it is so evident that the logs in the river at and after that time contributed to the injury complained of, we are unable to agree with the complainant that the evidence justifies further proceedings.

We have before us a record of what is manifestly the highest point reached by a spring freshet of unusual severity, and with no intermediate marks or data, upon which a report of commissioners could be based without working an injustice to one side or the other. Complainant urges that a radical change was made in the dam and if such is the fact a further preparation of the case may establish the rights sought to be enforced. We cannot assume that such radical, unauthorized raising of the dam has occurred, especially in view of the fact that it does not appear in evidence that a corresponding change was made in the bulkheads, or wheels of either mill served by the new concrete dam.

The entry must therefore be,

*Judgment for defendants with costs.*